**Wilburn H. WHITEHEAD, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 09 86 106 CR.**

Court of Appeals of Texas,
Beaumont.

Jan. 21, 1987.

Louis Dugas, Jr., Orange, for appellant.

Blair A. Bisbey, Seale, Stover, Coffield, Gatlin & Bisbey, Jasper, for appellee.

## OPINION

BROOKSHIRE, Justice.

Appeal from order revoking probation. Appellant had been previously convicted of theft of timber valued in excess of $200 but less than $10,000. A five year probated sentence and a fine of $1,000 had been assessed. That conviction was appealed to this court which modified one of the conditions of probation and affirmed. *Whitehead v. State*, 645 S.W.2d 482 (Tex.App.—Beaumont 1982, pet. ref'd).

Within the period of probation the state filed a motion followed by an amended motion to revoke probation. The amended motion alleged that the Appellant had violated condition (a), directing Appellant to commit no offense against the laws of this state or any other state or the United States. The amended motion charged Wilburn H. Whitehead with appropriating the property from one Hazel Burgman by executing a deed purporting to transfer real estate of Hazel Burgman to another. The property was in the W.D. Singletary Survey, Abstract 744, in Jasper County. At the hearing, Appellant appeared with retained counsel and resisted the motion to revoke. The State called eight witnesses and introduced before the district court eight exhibits, the defense calling no witnesses. After the hearing, the district judge found that Wilburn H. Whitehead had violated the condition (a) of his probation order.

### The Type of Deed Involved

Appellant says that the revocation proceedings should have been dismissed because the deed was a quitclaim deed and did not purport to transfer title. The deed in question was introduced before the trial court showing that it had been recorded in Volume 372 at pages 385 and 386 of the Deed Records of Jasper County. At the top, in capital letters, the deed is entitled "SPECIAL WARRANTY DEED". It recites, in substance, that the Appellant had granted, sold and conveyed unto Elmer Simmons all of Appellant's rights, title and interest to three separate tracts of land. The tracts of land are described in detail. The grantor, being the Appellant, provided:

"I do hereby bind myself, my heirs, executors and administrators to WARRANT and FOREVER DEFEND all and singular the said premises unto the said Grantee, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under me, but not otherwise."

The Special Warranty Deed also recited that the Grantee, Elmer Simmons, was:

"TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging...."

The Special Warranty Deed described a certain nine-acre tract in the W.D. Singletary Survey, along with a second tract of

fourteen acres and a third tract of forty acres. The State later demonstrated that the timber that was cut was from the nine acres of land.

 An appeal from an order revoking probation has one established and accepted standard of review. The standard of review is whether the trial court abused its discretion. *Wilson v. State*, 645 S.W.2d 932 (Tex.App.—Dallas 1983, no writ). Clearly, the trial court did not abuse its discretion in construing the deed in question as a Special Warranty Deed rather than a quitclaim. A reading of the deed from its four corners demonstrates that the trial judge was correct. Nowhere in the deed is the word quitclaim used.

It is usual and certainly customary in quitclaim deeds to use a word "quitclaim". *See Green v. West Texas Coal Mining & Developing Co.*, 225 S.W. 548 (Tex.Civ. App.—Austin 1920, writ ref'd). A quitclaim ordinarily uses the words " 'remise, release, and forever quitclaim....' " 30 TEX.JUR.3d *Deeds* sec. 12 (1983). The Appellant did not use those words. Appellant's first point of error is overruled.

### The Cutting of Timber

The Jasper County Sheriff's Department received a call in the latter part of October, 1984 that a considerable amount of timber was being cut from a tract of land and that the land did not belong to the timber cutters. A deputy sheriff made an investigation of the incident, later filing a report. That deputy inquired into the location and ownership of the tract where the timber was being cut. Tax office records were consulted. The particular tract of land belonged to the heirs of one J.R. Morgan, deceased. The property taxes had been paid by a Mr. Mabry who lived in the Mid-County area of Jefferson County. The taxes had been paid by the record owners for about fifty years. Glenn Mabry of Nederland was contacted. He visited the property and confirmed that the cutting of the timber that was then taking place was on a tract of land owned by his mother and his aunt, Hazel Burgman, heirs of J.R. Morgan. It was then confirmed that no

one had authorized any timber cutting on the tract. Mabry had visited the tract several times a year. He had never observed any signs of any adverse claims made to any part of the property.

### The Issue of Intent

Another witness, James K. Henson, who was with the land department of Temple Eastex, testified that he was familiar with Appellant's claims to timber property. Henson swore he had located more than thirty instances in which the Appellant had taken deeds from, or executed deeds to, various family members or other persons. In some cases, the land involved was considered "heir property" that involved absent owners. Henson testified:

"A Yes. As I stated, various members of his family would deed to him, then he would occasionally deed back to them, describing the same tract of land. There were other people involved in these transactions that were related several times in the transaction."

When Henson was asked if he had determined whether there was any prior chain of title of record into the persons that had executed deeds to the Appellant, he answered:

"A ... I would make a brief examination of the deed records and in most cases determine that the party who was deeding to him did not have title to the particular tract that was described in the instrument.

"Q Was that in checking the reverse deed index?

"A That's true."

The same judge tried the original case on the merits as well as the amended motion to revoke probation. That trial judge took judicial notice, without objection, to all of the testimony and evidence that was received at the original trial.

Henson further testified that, acting in cooperation with the Jasper County authorities, he and his survey crew investigated the cutting of the timber on the tract in question belonging to the Morgan heirs. This investigation and surveying was done at the request of the Jasper County Sher-

iff's Department as well as the District Attorney's Office. Henson located this particular tract of land on the ground and determined that timber had been cut from the same. The surveying revealed that the legal description of the tract, where the timber was cut, was upon one of the same tracts of land that was conveyed by the Appellant to Elmer Simmons, being the nine-acre tract.

■ There was evidence that the Appellant had engaged in certain similar actions or operations about thirty-three times, concerning certain deeds and other instruments recorded in the deed records of Jasper County and other surrounding counties. The State offered these prior actions to show that the same person involved had a same or similar motive, intent or modus operandi. The trial court admitted the same pursuant to *TEX.PENAL CODE ANN. sec. 31.03(c)(1)(2)* (Vernon Supp. 1987). We think that the trier of facts below had a right to hear the testimony of other offenses on the question of whether or not Appellant's probation should be revoked. We think this testimony was admissible, relevant and material. The Appellant's second ground of error argues that introducing these extraneous offenses before the court constituted reversible error. We disagree.

It was certainly proper for the State to undertake and to show to the trial court the Appellant's intention, being to deprive the true owners of the property of their land and timber.

We conclude there is ample evidence and testimony of strong probative force that the Appellant had the intent to deprive the owners of their property and there was an unlawful appropriation of the owners' property and that Appellant's actions were without the owners' effective consent. The State showed that the Appellant committed the offense of theft and, as a direct result of his actions, the owners lost the value of their timber that had been cut. Hence, ground of error two is overruled.

Appellant's last contention is that the trial court admitted into evidence an affidavit of heirship which was on record less than five years. He argues this constituted reversible error. We disagree. Under this entire record, it was for the district judge to decide who had the greater right to title and possession of the tract of land. *Whitehead v. State, supra.*

■ We decide that the introduction of the affidavit of heirship was not error nor was it harmful error. It was certainly not reversible error. The witness, Glenn Mabry, who was the nephew of Hazel Burgman, testified in person and was carefully examined and cross-examined. His testimony was direct and clear as to the true owners. We willingly follow the holdings in *Moore v. State,* 160 Tex.Crim.R. 183, 268 S.W.2d 187 (1954) that criminal courts and criminal proceedings are not the proper forum for the determination of title to real estate. Certainly, a criminal prosecution is not the vehicle for making any such technical real estate title determination. Rather, we follow the recognized standard for review of order revoking probation involving such title or heirship issues. *Jones v. State,* 582 S.W.2d 129 (Tex.Crim.App.1979), in substance, mandates that a reviewing court must view the evidence in a light most favorable to the ruling below. It was certainly the prerogative of the district judge to determine who the owners were. He did so correctly, in our opinion, under this record. We overrule the three assigned errors advanced by Appellant. The district judge did not err; he did not abuse his discretion. We affirm the order below revoking probation.

AFFIRMED.